GEOTAS COMPANIA DE VAPORES, S. A., Libellant and Cross-Respondent,

v.

S. S. ARIE H., her engines, furniture, tackle and apparel

and

Transandina Compania Naviera, S. A., Respondent and Cross-Libellant.

No. 341 of 1962.

United States District Court E. D. Pennsylvania.

Jan. 30, 1964.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa., for libellant.

Harrison G. Kildare, Rawle & Henderson, Philadelphia, Pa., for respondent.

VAN DUSEN, District Judge.

This case comes before the court on respondent-cross-libellant's (hereinafter referred to as cross-libellant) Motion For Entry of Order Under General Admiralty Rules 50 and 38, and Under Local Admiralty Rule 21 (Document 13).

Libellant, Geotas Compania De Vapores, S. A. (hereinafter referred to as "libellant" or "Geotas") acted as managing agent for Transandina Compania Naviera, S. A., the cross-libellant, for a one-year period during 1961–1962.

On October 24, 1962, Geotas, together with three other libellants, attached the vessel, Arie H., belonging to cross-libellant while it was in the Port of Philadelphia. The Libel filed by Geotas claimed $7,584.92 for unpaid agency fees. The amount stipulated was $8,250,00, and corporate security for that amount was posted and the vessel released.[1] On April 15, 1963, answers to the Libels were filed, as well as cross-claims against Geotas and another.[2] The cross-claim against Geotas alleged that the libellant had incurred a total of $39,000. worth of unauthorized charges, repairs and other services. It is alleged that these charges for unauthorized repairs and services were incurred abroad in November and December of 1961. This amount was stipulated as $46,800. and demand for security in that sum was made by cross-libellant. When it was not received, this Motion (Document 13), seeking an order that libellant post such security or that the action be stayed, was filed.

Admiralty Rule 50, 28 U.S.C.A., provides:

"Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs."

 This rule has generally been construed to mean that whenever a libel-

---

1. For the four Libels, $29,000. was posted, along with a $250.00 cost bond for each suit. The $8,250. is that portion of the $29,000. allocated to this libellant's suit.

2. A cross-libel was also filed against Christos G. Sideratos (No. 345 of 1962).

Cross-libellant filed a similar motion in that action, which will be decided in accordance with this opinion in view of the letter of January 22, 1964, attached to the order being entered in that case.

lant requested and received security from a respondent, then libellant would be required to post security if a cross-libel were filed and cross-libellant demanded security. Washington-Southern Nav. Co. v. Baltimore & Philadelphia, etc., Co., 263 U.S. 629, 44 S.Ct. 220, 68 L.Ed. 480 (1924). The purpose of the rule is to put the parties on equality so far as security is concerned. Washington-Southern Nav. Co. v. Baltimore & Philadelphia, etc., Co., supra, at pp. 638–639, 44 S.Ct. 220; Partenreederei Wallschiff v. The Pioneer, 120 F.Supp. 525 (S.D.Mich.1954). It has been held under Rule 50 that it is within the court's discretion to relieve the original libellant from his obligation to post security where that libellant is shown to be insolvent. The City of Beaumont, 8 F.2d 599 (4th Cir. 1925). Geotas has filed an affidavit (Document 17) which shows that, as of September 3, 1963, that company had a deficit of $347,816.92 and was $6,533.00 overdrawn at its bank. The affidavit also stated that Geotas could not afford the expense of a $46,800. bond, nor could it post security to obtain such a bond.

In addition to the affidavit, the following language is helpful in deciding this Motion:

> "The rule [Rule 50] never contemplated * * * that, where the parties to the original libel had established their rights and obtained security, this should be lost to them, because of their inability, arising from insolvency or other good reason, to procure a bond to respond to a large claim asserted in the cross-libel, and that as a result their libel should be dismissed. This would not only be unjust, but would in effect negative and nullify the provision of the rule giving to the trial court full discretion to act upon the very subject involved, and would be entirely contrary to the ruling of the Supreme Court in the recent case hereinbefore cited." (Washington-Southern Nav. Co. v. Baltimore & Philadelphia, etc., Co., supra). The City of Beaumont, supra, 8 F.2d at page 601.

Here, libellant, prosecuting a $7,584.-92 claim, is requested to post a $46,800. bond.

> "The Supreme Court has said: 'Here, as in England, the purpose of the provision was declared to be to place the parties on an equality as regards security.' * * * How is equality to be achieved? We think the question must be referred to the context of the case, and it is undesirable to attempt to formulate a universal rule. The case now before us illustrates the inappropriateness of a mechanical formula. The rule seeks to avoid confining the practice within a straight jacket by empowering the Court to 'otherwise direct,' either as to requiring a bond or as to a stay of proceedings for failure to give bond." Spriggs v. Hoffstot, 240 F.2d 76, 79 (4th Cir. 1957).[3]

The court, in determining the "usual amount," and endeavoring to apply Admiralty Rule 50 to achieve equality, has considered the record, affidavits, arguments and memoranda submitted by the parties. Under the circumstances surrounding this case, the court finds that the purposes of the rule would best be effectuated and the parties protected by requiring the libellant to furnish security or post bond equal to the amount

3. In Spriggs v. Hoffstot, a similar situation arose. There libellant requested and received a $25,000. bond. Subsequently, a second action was commenced by a third party against the respondent for $300,000. If the respondent had been liable in this second suit, then respondent would have had a right of contribution from the libellant for $150,000. At first, the District Court stayed the action until libellant posted a $150,000. bond, but later vacated that order. In affirming the District Court's action, the Circuit Court noted the unjust result that would follow if the libellant were required to post bond several times the size of his claim before proceeding further.

posted by the cross-libellant ($8,250.). Bond in this amount will give the cross-libellant some degree of protection and, at the same time, not impose an oppressive burden upon the libellant. In the event that libellant does not post the bond in this amount, the cross-libellant may submit after thirty days an order to stay all proceedings and, in due course, a motion to dismiss the Libel for want of prosecution.